**NATIONAL FOUNDRY CO. OF NEW YORK, Inc., v. ALABAMA PIPE CO. et al.**

No. 7281.

District Court, E. D. New York.

July 16, 1934.

Ernie Adamson, of New York City, for plaintiff.

I. Bregoff, of New York City, for defendant Alabama Pipe Co.

Shearman & Sterling, of New York City, for defendant Hedges-Walsh-Wiedner Co.

John Marx, of New York City, for defendants Reading Foundry & Supply Co. and Louis B. Laddoux, Inc.

Oeland & Kuhn, of New York City (Edwin L. Garvin, of New York City, of counsel), for defendants Sanitary Company of America and A. L. Gunther.

Guggenheimer, Strasser & Meyer, of New York City (Ira D. Wallach and Charles Ettinger, both of New York City, of counsel), for defendants A. Weiskittel & Son Co. and John C. Wickes.

Guggenheimer & Untermyer, of New York City (Edward T. McLaughlin, of New York City, of counsel), for defendant Central Foundry Co.

GALSTON, District Judge.

The complaint sets forth that the defendants are engaged in the business of manufacturing, selling, and distributing cast-iron soil pipe and fittings shipped in interstate commerce to New York and distributed in the so called "metropolitan" area of New York.

The gist of the allegations of the complaint is that the defendants have violated the anti-trust laws. In this respect it differs from the complaint in the law action pending in this court between the parties, which, as will appear from the opinion filed concurrently herewith (7 F. Supp. 821), sets forth a violation by these defendants of the Cast-Iron Soil Pipe Code of Fair Competition.

It is alleged that the defendants conferred with one another and exchanged information with an unincorporated group of corporations and individuals, known as the Cast-Iron Soil Pipe Association, regarding the establishment of prices and terms, conditions, and practices in connection with the use of said prices in the sale of cast-iron soil pipe and fittings; also that the defendants, during the six months preceding the filing of the bill, have "by various acts, unjustified reductions in prices, changes in terms, conditions and practices, and by other unjustified and unfair schemes and devices, demoralized the cast iron soil pipe trade in the City of New York, and have created a condition which is destructive to petitioner's business," and further that the defendants "seek to disrupt and destroy the good relations existing between petitioner and its customers, by the circulation of false and unfounded rumors to the effect that petitioner was and is engaged in the manufacture of cast iron soil pipe and fittings in violation of certain statutes of the United States," and that petitioner operates the only cast-iron soil pipe foundry in the city of New York.

It is alleged that the plaintiff has been caused great damage by these defendants; that the acts amount to unfair and unjust trade and also amount to a substantial monopoly of the said trade in New York City.

It is also alleged that in quantities of less than 40,000 pounds, by common agreement, the defendants offered to sell, and do sell, their products at less than cost of production in New York City; and that they are seeking to eliminate the plaintiff from the industry.

Though the suit is in equity, the plaintiff seeks a judgment in the sum of $100,000, and treble damages, and an injunction.

A number of the defendants have moved to dismiss the complaint on various grounds: First, that it appears from the face of the complaint that the court has no jurisdiction over the subject-matter of the action; secondly, that the plaintiff has not legal capacity to sue; and, thirdly, because the facts alleged do not state a cause of action.

The defendants, in seeking a dismissal of this complaint, mistakenly read into it the allegations of the law action. Since the motion is one for a dismissal, the sufficiency of the complaint can be adjudged only by what the allegations of the complaint set forth. There is no reference in this complaint to the National Industrial Recovery Act or the Trade Code.

In consequence, the argument that is advanced that plaintiff as a private corporation has no status to bring suit for violation of the National Industrial Recovery Act (48 Stat. 195), is without applicability. In saying this, however, I do not mean for a moment to indicate that the real facts, not the ostensible facts, may present such a situation either at the trial or on a motion for a preliminary injunction as may make that defense available.

In the present state of the case, however, and based solely on a consideration of the complaint, it is idle also for the defendants to argue that the anti-trust laws are tolled by the National Industrial Recovery Act, title 15, U. S. C. § 705 (15 USCA § 705), for that section provides merely that while the National Industrial Recovery Act is in effect and for sixty days thereafter, "any code, agreement, or license approved * * * and in effect under this chapter, and any action complying with the provisions thereof * * *

shall be exempt from the provisions of the antitrust laws of the United States."

Therefore, the residual question is whether the complaint sets forth a cause of action under the anti-trust laws. If it does, then plaintiff is given status to bring the action by virtue of the Clayton Act, title 15, U. S. C. § 26 (15 USCA § 26), which provides: "Any person, firm, corporation * * * shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws * * * when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity. * * *"

It may be noted that this section does not go further in terms, however, than to give an injunction to private persons against threatened loss.

An award of triple damages provided by section 15 of title 15, U. S. C. (15 USCA § 15), cannot be given in equity. Fleitmann et al. v. Welsbach Street Lighting Company, 240 U. S. 27, 36 S. Ct. 233, 234, 60 L. Ed. 505. In that case a stockholder brought an action against the Consolidated Street Lighting Company and a number of other corporations and individuals, to compel the defendants, other than his own company, to pay to the latter threefold damages under the Sherman Anti-Trust Act (15 USCA § 15 note). Mr. Justice Holmes wrote: "We agree with the courts below that when a penalty of triple damages is sought to be inflicted, the statute should not be read as attempting to authorize liability to be enforced otherwise than through the verdict of a jury in a court of common law." Venner v. Pennsylvania Steel Co. (D. C.) 250 F. 292; Meeker v. Lehigh Valley R. Co. (C. C.) 162 F. 354; Decorative Stone Co. v. Building Trades Council of Westchester County (C. C. A.) 23 F.(2d) 426.

It clearly appears, therefore, that if the complaint states a cause of action, the plaintiff must elect as between the two remedies which it seeks herein, for if the complaint is to be considered as a bill in equity, which must be done in its present form, then no relief can be granted under section 15 of title 15, U. S. C. (15 USCA § 15).

The discussion now brings us to the sufficiency of the complaint. None of the many defendants raised this question either at the argument or in the briefs submitted.

The Sherman Anti-Trust Act, § 1, title 15, U. S. C., § 1 (15 USCA § 1), provides that: "Every contract, combination * * * or conspiracy, in restraint of trade or commerce among the several States, * * * is declared to be illegal. * * *"

The complaint charges the defendants with having effected reductions in prices and conditions of sale which have demoralized the industry in the city of New York and created a condition destructive to the petitioner's business; and that the defendants seek to disrupt and destroy the petitioner's business by circulating false rumors concerning the plaintiff. That the acts of the defendants are unfair and amount to an unjust restraint of trade and create a substantial monopoly of the trade in New York City; and that in so doing, they have "collaborated and transpired to disrupt and break down the cast iron soil pipe industry in New York City for the purpose of eliminating the petitioner from the industry."

I think by a fair test that this in outline presents a compliance with the statute. Albert Pick-Barth Co., Inc., v. Mitchell Woodbury Corporation (C. C. A.) 57 F.(2d) 96.

Accordingly, the motion to dismiss the complaint is denied.

The defendants the Hedges-Walsh-Wiedner Company, Reading Foundry & Supply Company, Sanitary Company of America Corporation, and A. L. Gunther, appear specially for the purpose of moving to vacate and set aside the process of the court served upon those defendants.

Louis B. Laddoux, Inc., the complaint alleges, is a New Jersey corporation, engaged in the sale and distribution of cast-iron soil pipe and fittings in New York, as agent for the defendant Reading Foundry & Supply Company. The affidavit of its president shows that process was served upon its agent, the Corporation Guaranty & Trust Company in Wilmington, Del. Louis B. Laddoux avers that his corporation is not the agent of the Reading Foundry & Supply Company; but does state that Louis B. Laddoux, Inc., is engaged in the sale of soil pipe and fittings, and makes sales thereof, upon a commission basis, in New York.

The Reading Foundry & Supply Company is in the complaint alleged to be a Delaware corporation, having its principal place of business in Reading, Pa., and having an agent, Louis B. Laddoux, Inc., maintaining an office at 220 Fifth avenue, New York City, through whom the defendant distributes cast-

iron pipe and fittings in the borough of Brooklyn, in the district of New York.

The affidavit of John Marx shows that service was effected upon the corporation in Delaware. The return of the United States marshal of the Southern district of New York shows that service upon this defendant was effected by subpœnas served upon Louis B. Laddoux, the president of Louis B. Laddoux, Inc., at 220 Fifth avenue, New York City.

The defendant the Sanitary Company of America Corporation is alleged in the complaint to be a Delaware corporation, engaged in the manufacture of cast-iron soil pipe and fittings, with its principal office in Lincoln, having an agent, A. L. Gunther, with an office in Long Island City, through whom it sells and distributes cast-iron soil pipe and fittings in New York. This corporation files the affidavit of August L. Gunther, wherein it is averred that he is a salesman in the employ of the Sanitary Company, and that that corporation does not transact any business in New York State. The affidavit, however, contains no denial that he sells and distributes cast-iron pipe and fittings in New York for the account of the Sanitary Company of America Corporation.

The Hedges-Walsh-Wiedner Company is alleged in the complaint to be a Delaware corporation, with its principal office in Chattanooga, Tenn., and that it has an agent, the Continuous Sales Corporation, in Long Island City, through which agent it sells and distributes its products in the New York district.

The affidavit of MacIlburne Voorhies, one of the attorneys of this company, avers that service was made on Albert E. Cohen, president of the Continuous Sales Corporation, although the marshal's return indicates that it was served on a Mr. Horowitz, treasurer of the Continuous Sales Corporation.

The affidavit of Albert E. Cohen shows that he is the president of the Continuous Sales Corporation. He asserts that that corporation was organized under the laws of the state of New York, and is entirely separate and distinct from the defendant the Hedges-Walsh-Wiedner Company; that that company is in no way financially interested in nor does it control the activities of his company; that his company sells a variety of products manufactured by various foreign corporations, among which is the cast-iron pipe and fittings manufactured by the Hedges-Walsh-Wiedner Company. The expenses of doing business are paid by his own corporation, and no part thereof is paid by the Hedges-Walsh-

Wiedner Company. The latter name does not appear on any letterhead of his company, does not appear on the sign upon his premises, and the telephone service is listed in the name of his corporation and not in that of the Hedges-Walsh-Wiedner Company.

Section 22 of title 15, U. S. C. (15 USCA § 22), is the authority for effecting service on those corporations which are not inhabitants of the judicial district in which the suit is brought. The section reads: "§ 22. District in which to sue corporation. Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found. (Oct. 15, 1914, c. 323, § 12, 38 Stat. 736.)"

The courts have given great latitude to the term "transacts business," as used in the foregoing section. The case of Eastman Kodak Co. v. Southern Photo Materials Company, 273 U. S. 359, 47 S. Ct. 400, 403, 71 L. Ed. 684, was one in which the suit was brought by the plaintiff in the Federal District Court of Northern Georgia, against the Kodak Company, a New York corporation, to recover damages for injuries sustained by the plaintiff through the defendant's violation of the Anti-Trust Act. Under the foregoing section of the Clayton Act, process was issued and served upon the defendant, pursuant to an order of the court, at Rochester, N. Y., where it had its principal place of business. The defendant, appearing specially, traversed the return, entered a plea for jurisdiction, and moved to quash the service. The opinion holds:

"And we think it clear that, as applied to suits against corporations for injuries sustained by violations of the Anti-Trust Act, its necessary effect was to enlarge the local jurisdiction of the district courts so as to establish the venue of such a suit not only, as theretofore, in a district in which the corporation resides or is 'found,' but also in any district in which it 'transacts business'—although neither residing nor 'found' therein—in which case the process may be issued to and served in a district in which the corporation either resides or is 'found'; and, further, that a corporation is engaged in transacting business in a district, within the meaning of this section, in such sense as to establish the venue of a suit—although not present by agents carrying on business of such character and in such

manner that it is 'found' therein and is amenable to local process—if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character. This construction is in accordance, not only with that given this section by the two lower courts in the present case, but also with the decisions in Frey & Son v. Cudahy Packing Co. (D. C.) 228 F. 209, 213, and Haskell v. Aluminum Co. of America (D. C.) 14 F.(2d) 864, 869. And see Green v. Chicago, B. & Q. Ry., 205 U. S. 530, 533, 27 S. Ct. 595, 51 L. Ed. 916, in which it was recognized that a corporation engaged in the solicitation of orders in a district was in fact 'doing business' therein, although not in such sense that process could be there served upon it.

"We are further of opinion that a corporation is none the less engaged in transacting business in a district, within the meaning of this section—which deals with suits respecting unlawful restraints upon interstate trade —because of the fact that such business may be entirely interstate in character and be transacted by agents who do not reside within the district. And see International Harvester v. Kentucky, 234 U. S. 579, 587, 34 S. Ct. 944, 58 L. Ed. 1479; Davis v. Farmers' Co-operative Co., 262 U. S. 312, 316, 43 S. Ct. 556, 67 L. Ed. 996."

Mr. Justice Sanford, moreover, adds: "To construe the words 'or transacts business' as adding nothing of substance to the meaning of the words 'or is found,' as used in the Anti-Trust Act, and as still requiring that the suit be brought in a district in which the corporation resides or is 'found,' would to that extent defeat the plain purpose of this section [15 USCA § 22] and leave no occasion for the provision that the process might be served in a district in which the corporation resides or is found. And we find nothing in the legislative proceedings leading to its enactment which requires or justifies such a construction."

See also Jeffrey-Nichols Motor Co. v. Hupp Motor Car Corporation (C. C. A.) 46 F.(2d) 623; Northern Kentucky Telephone Co. v. Southern Bell Telephone & Telegraph Company (D. C.) 54 F.(2d) 107.

Thus, within the interpretation of the statute, it may well be that all of these protesting defendants are transacting business within the Eastern district of New York; but as to some, process obviously was not properly served.

■ The alleged service on Sanitary Company of America Corporation, according to the marshal's return, was effected by leaving the subpœna with the wife of A. L. Gunther. Such service is effective against him personally, but it was not sufficient as service upon the Sanitary Company of America Corporation, since the wife of A. L. Gunther is not alleged to be engaged in transacting business for the Sanitary Company of America Corporation. The motion of that corporation to set aside the alleged service is granted.

■ Whether the Hedges-Walsh-Wiedner Company or the Reading Foundry & Supply Company "transacts business" in the Eastern district of New York within the meaning of the aforesaid statute cannot be determined in view of the contradiction resulting from the allegations of the complaint and the averments of the affidavits in support of the motion to vacate and set aside the alleged service. The matter must be referred to a special master to take evidence and report his findings.

Settle orders on notice.